Case No. 15-3075 United States of America v. Nizar Fenn Abdelaziz Trabelsi Also known as Nizar Fenn Abdelaziz Trabelsi Also known as Abu Qa Qa Appellant Ms. Petras for the Appellant, Mr. Smith for the Appellant May I please report, Mary Petras on behalf of Nizar Trabelsi I would like to reserve 3 minutes of my time for rebuttal Mr. Trabelsi was charged in Belgium with the same offences that are charged in the indictment here The prosecution of the indictment violates the extradition treaty The treaty prohibits extradition when a person's god has been found guilty, convicted or acquitted for the same offences as in the requested state The record unequivocally demonstrates that Mr. Trabelsi was charged with conspiracy Not just attempts, but conspiracy in Belgium And that the district court erred when it distinguished the offences based on this distinction Let me ask a question Let's suppose that the Belgian courts have interpreted the treaty and the facts here as you were arguing Let's suppose they said that double jeopardy is based on the same evidence And even if it's the Blochberger test, we find that it meets the Blochberger test and it's double jeopardy But that the Minister of Justice said, you know, I agree with that legal analysis But as a matter of international comedy, I am going to allow the extradition to go forward and send Mr. Trabelsi to the United States for foreign relations purposes Could we review that decision? Yes, if he's extradited based on the treaty If he's not extradited based on the treaty, but the parties decide to forego the treaty and there's some other provision or some other way in which they get custody of Mr. Trabelsi Then he would not have the protections of the treaty But he was brought here under the protections of the treaty And once the treaty is used to extradite, then he gets all of the protections that are in there And under the treaty, both parties have agreed mutually not to prosecute the same offences So under my hypothetical, we could review that decision? We could say that the Minister of Justice shouldn't have accommodated the United States? If the extradition takes place under the treaty, yes But I guess the question is, does Belgium have the authority to waive Article 5? I don't think that Belgium has If the means by which the person is being transferred from one state to another is the extradition treaty Then the parties that have signed off on that provision cannot just simply ignore it Why not? If they say, we have this agreement and we have required certain conditions But in this instance, this condition is one we're going to waive That would be no different than saying that there is a law that says people can't rob banks But we're going to decide that these people can rob this bank The treaty is a law like no other So the United States can't waive its own laws And the United States and Belgium can't waive the law that they've agreed to, which is the treaty And here, because the treaty has been ratified And the treaty becomes the law of the United States So it can't simply be ignored Can you direct us to... It was my understanding that signatories to a treaty actually could waive terms And I wonder if... You suggested that one aspect of that is just that a treaty becomes the law of the land And so how could it be subject to waiver? But is there anything more specific on non-waiver in a circumstance like this? I would have to think about that, because that issue was not raised by the government And because, as a matter of fact, Mr. Gervais was brought here pursuant to the treaty So he did come here with all of the protections that the treaty provides We're just trying to explore our jurisdiction What authority do we have? How much deference? Do we have authority to second-guess what Belgium did? And so we're trying to understand the range of what Belgium might have been understanding itself to have done I think that the court, in this particular case The only issue is whether or not, because he was brought by the treaty The only issue is whether or not the treaty was violated And then does he have the protections of the treaty? The cases that the government has cited to suggest that the court should not enforce the treaty That that's between the United States and Belgium Are cases that address different issues And the government has criticized us Because there's no issues that are directly on point on the double jeopardy issue But the cases fall into two different categories One set addressing the dual criminality question And one set addressing the doctrine of speciality The double jeopardy issue is much closer to the doctrine of speciality issue Than it is to the dual criminality question Because the dual criminality question is a question of Can this person be extradited? And it's based solely on the law of the requested state But the question of doctrine of speciality is Can this person be prosecuted like this? And the question is, does the treaty allow for this type of prosecution? And the same issue is The issue is put in the same for double jeopardy Because the issue is, can we prosecute this offense? And under the treaty, the answer is no And I do want to answer your questions with regard to jurisdiction But I did, before I forget, I wanted to get back to one point I think it was raised by Judge Wilkins' question We are not arguing for a same conduct test We do recognize that the treaty provides for The same offenses cannot be prosecuted And that the basis of that test has to be looking at the elements of the offenses All we're saying is that in the context of comparing international offenses You can't look to a strict Blockberger element-to-element test And you can't completely ignore the underlying conduct And I think that it's true that you can't completely ignore the underlying conduct In any double jeopardy issue Because, for example, if a person is charged with murder in Belgium And murder in the United States You always have to look to whether or not they're charged with the same underlying conduct The same exact murder In international conduct, to use the Blockberger test And use elements that the government has attempted to use to distinguish these offenses Such as the connection to the U.S. persons and property As compared to the Belgian charge focusing on persons in general Doesn't make sense because that would distinguish every offense The same is true with regard to the designation of the organization As a terrorist organization being the element in the United States And the element in Belgium being an association formed to attack people or property But Ms. Petras, what about the element that the United States law requires Which is that the organization be a foreign terrorist organization Not its designation per se by the United States But that the kind of terrorism that the United States law is focusing on Is foreign terrorism And in Belgium it's not at all limited in that way But to distinguish the associations or the elements of the offenses on that basis Is just a matter of terminology Belgium is calling Al-Qaeda in this case An organization formed for the purpose of attacking people and property Whereas the United States is designating it as a foreign terrorist organization I think when you're comparing elements of an international offense The issue is whether or not they were prosecuting the same entity Well, prosecuting the same offense And one is about foreign terrorist organizations And the other is about associations or gangs And to the extent that they overlap but have each areas of non-overlap Isn't that what we're looking for in applying the Blackburger analysis? I don't think that that's the case Because the fact that the Belgian law when it criminalizes organizations Uses different terminology Does not change it from being the same In the sense that the U.S. designation as a foreign terrorist organization If you look at those definitions They are based on organizations that are formed for the purpose of attacking people and property So in that sense they are the same They just haven't been designated by the United States As opposed to an organization within Belgium So the issue here, and this is part of what we're saying With regard to using a strict Blackburger test in the international context Because here the offense clearly was the same It's just that under the Belgian law They call these organizations one thing And under the U.S. law they call them another thing But we are talking about the same organization And the same types of organizations But that really goes back to sort of a Cydonia kind of analysis Which I thought you were acknowledging should not apply There's a fine line Particularly here because you don't have to go so far as the test in Cydonia seemed to go Because the issue isn't just did they both charge an Al-Qaeda offense But are the criminal laws in Belgium and the criminal laws in the United States Designed at targeting the same groups And the fact that they may not be precisely the same Should not be enough to distinguish them for purposes of double jeopardy under the treaty Because you're never going to have a Belgian law That's going to define criminal organizations in the same exact way as the U.S. law is defining them And the treaty itself recognizes that different terminology does not distinguish offenses For at least in a So one country may use association and the other country may use conspiracy And we're going to say that's equivalent But where one country says conspiracy to kill U.S. nationals And our sovereign interest as the United States is in protecting U.S. nationals abroad That seems to me that that's a sovereign interest And this is not the interest that's asserted by Belgium In protecting the enumerated structures in its law Bridges and installations of various kinds I don't think the court can look to whether or not the U.S. has some sovereign interest Because any offense that the U.S. charges Particularly if there's extraterritorial jurisdiction There's going to be a U.S. interest in doing it Here, the way that the U.S. reaches to Belgium and gets offenses in Belgium Is by only targeting offenses against U.S. nationals But that description alone can't be enough to distinguish international offenses Otherwise there would always be such an element Not necessarily Because block burglary requires non-overlap both ways So if you have murder in Belgium And then you have U.S. law that says We're going to ask for extradition when the murder that happened in Belgium Was of a U.S. national Then that's going to be barred by Article 5, right? And this is essentially no different Because what Belgium has charged is murder by explosion, essentially Because they have charged plotting to bomb something while people are present Which is a second degree murder or a felony murder And the charges here are under 2332b2 and under 1111a Which includes second degree murder and felony murder So this is no different than that Because Belgium has charged plotting to bomb something while people are present And we have charged using a bomb, a weapon of mass destruction And the murder together, which together form the Charge A in Belgium But our Charge 1 has a conspiracy Their Charge A doesn't Our Charge 1 has a target of U.S. nationals Their Charge A doesn't Their Charge A aims to bomb one of the enumerated structures Our Charge has nothing about structures So it seems like under a Blockburger analysis There's quite a bit to work with First of all, our Charge A is a conspiracy Our Charge is a conspiracy Their Charge is a conspiracy And I asked the court to look at the record on this Because we submitted both the judgment in Belgium And the direct appeal in Belgium Both of which quote the charging document at the beginning There are two cases together, so it's a little confusing But the case in which Mr. Trabelsi was charged Begins on page 359 of the record As to the judgment of the trial court in Belgium And page 142 of the record As to the court of appeals decision And the direct appeal of Mr. Trabelsi's conviction in Belgium That sets forth the charges in Belgium And at the very beginning of it, it charges It describes the ways in which he's charged with having committed the offenses And specifically uses the word conspiracy The only reason the district court made the mistake of saying That these were not conspiracy charges Because remember the government was not arguing that below The only reason he made the mistake was because it wasn't raised And we never had the opportunity to say look at the record He was charged with conspiracy We've spoken to the lawyers in Belgium Here's what they've given us These are what the charges were And if you look at the description in the court of appeals decision Of what the charges were It specifically has a category called Charges related to criminal conspiracy So why is it? I think part of the reason why there's so much deference Paid by US courts to foreign courts and ministers Determination of their laws Because comparative law is very sophisticated And easy to get wrong But as I understand it Just reading the Belgian laws They were charged under criminal Travelsa was charged under Belgian criminal code 525, 10 and 51 For charge A Which is the one that you're claiming overlaps with counts 1 and 2 And I don't see a conspiracy element in those laws But it's charged as a conspiracy Where does that come in? It comes in at the beginning of the charging document It lists the ways in which it is charged What work does that do in Belgium? What work does that do? Does it give you eligibility for more time? Is it just a method of proof? Is it like aiding and abetting? Why is it not codified? I think the penalties are the same But that's the way it's charged And if you look at the charging document It has conspiracy in it If you look at the And while we may not understand it And it may not have been the same way we would charge a conspiracy for charge A The documents demonstrate that it clearly was Because if you look at the opinion It describes the conspiracy that was charged That he was convicted of And it states conspiracy as the means by which he was accused of having committed the offense Also, even if you had a doubt about that If you looked at charge D He was specifically charged with being an instigator of an association Who was for the purposes of attacking people and property Which is the same as count 1, attacking people And count 2, attacking people and property By explosion when you add in the charge But the Belgian courts have reached the conclusion That even if we assume that they understood That it was a conspiracy under Belgian law That it wasn't the same conspiracy within a block murder type analysis How are we to just ignore their interpretation of their own law? Because they weren't interpreting their own law They were interpreting both laws And they did not find that the distinction was a conspiracy in the United States And no conspiracy in Belgium That's not at all what they found What they found was essentially that it was a different conspiracy Because they took out over at Acts 23 through 26 Which it appears from the record they believed Changed the nature of what Mr. Trabelsi could be convicted of in the U.S. In fact, they were wrong about U.S. law Not about Belgian law They were wrong on their understanding of what that did to the U.S. charges Because in practice it did nothing Because the government is using the same plot to destroy Klein-Grugel And there is no other evidence other than the plot to destroy Klein-Grugel But isn't that the distinction between the first level of decision And the second level of decision And then the final level of decision I mean, isn't that part of the difficulty that you're taking us into I thought the first argument in part was Given the provision in Article 5 It's not the same as a Blochberger test for purposes of double jeopardy And that while we find Blochberger to be an easy test to apply That's not the concept that Article 5 was addressing So then that takes us down the road of trying to understand these two different legal systems And some of the questions you've been answering this morning It seems to me suggests that either we're going down this very difficult road you're suggesting Or we're pretty close to the other end Saying we take the Belgian minister and the document at what it said And if in our legal system we are satisfied under a Blochberger test That there are different elements That that is sufficient under the treaty And I'm not suggesting that Belgium knows we have a Blochberger test But there is some respect for different legal systems And the way they approach charges And if a country wants to be very specific about something It can But if it isn't Then there is this deference that kicks in in international comedy If you give that deference to Belgium in this case Then you will be allowing them to interpret our law Which we've never in any case Deferred to a foreign court's interpretation of what the U.S. law is You'd be deferring to their decision as to what the U.S. charges were This court is in no different position to compare the Belgian offenses to the U.S. offenses Than the Belgian court was And to completely allow them to do it Would be allow them to make the mistake such as they make here No, but the record we have before us Was that the first level tried to distinguish the nature of the conspiracy By eliminating certain overt acts That would not follow through It was And that's the government's misrepresentation with regard to what the Belgian system is And if you look at the record in all of these opinions It's clear Because the first step is the same as it is in the United States The prosecutor has to go to the magistrate judge and say Is this warrant enforceable? That's the very first step And that's the only way anybody can be extradited They did that in Belgium They went to the Belgian court And that court took out those overt acts Eliminating those overt acts Remained through the entire process All the way to the Belgian Ministry of Justice I thought when it went up to the Court of Appeals They didn't do that No, they didn't It wasn't challenged in the Court of Appeals That would have been the Belgian government's decision To challenge the removal of those overt acts And the Belgian Court of Appeals' decision Following in the extradition case Which is at I'll find it But that first Court of Appeals' decision Specifically said And this is cited in our brief That we That removal of those overt acts Isn't before the courts Because the Belgian government didn't challenge that So the Belgian government was stuck with that all the way through And even if you go to the Minister of Justice's decision He begins with Given that We've removed those overt acts 23 through 26 Which all demonstrates That the Belgians made a mistake As to what the US law Refers to those But interprets it slightly differently From how you're characterizing it The Minister says You couldn't prosecute For acts 23 through 26 As themselves criminal But you could consider them as evidence Or overt acts Or components of the broader conspiracy Which is And the United States seems satisfied with that And so They seem satisfied with that Because they know Unlike what the Belgians apparently didn't know That they can simply prove The more narrow conspiracy Even though they've charged US citizens Wherever they may be They can go in Present the evidence Because the Belgians are allowing them to present the evidence But I don't think that's in conflict With what the Minister's opinion contemplates Do you? Yes Because if you look at what the Minister's opinion contemplates And what all the Belgian decisions contemplate Is that they've charged The United States has charged some broader conspiracy Some other conspiracy And it even says in the opinion Unconnected to Belgium But that's not what they've charged here They've charged the same conspiracy That's the other reason why the court has to look To the facts when comparing Offenses in this case Because you're comparing conspiracies The government cannot break up One conspiracy Into multiple separate offenses And that's what they're doing here And they seem to have done it By confusing the Belgians into thinking That it's a separate conspiracy But it's the same conspiracy It's the same actors It's the same Al Qaeda plot It's the same evidence It's the same events And the underlying charges To murder and to use A weapon of mass destruction And a bomb are all the same So for those reasons it's one big conspiracy They charge Even if you look at it as they only charge Part of it in Belgium They can't now charge it saying Wherever they may be And particularly here it's offensive Because they're only using the evidence of Klein Bruegel Even though they've labeled it wherever it may be Alright, why don't we hear from the government Thank you Good morning Good morning, may it please the court Peter Smith on behalf of the United States I would like to Address a few of the points That appellant counsel made First I want to make the overall point That this court should not Review appellant's claim Belgium Considered and rejected The arguments that appellant is making Now The Casey decision indicates reasons why This court ought to grant The decision of the Belgian government Deference Those reasons are Persuasive and powerful They include comedy And respect for foreign relations Belgium is our equal Treaty partner in the bilateral Treaty and this court Ought to recognize That treaty obligation Extends to The Belgian decision Where we do extradite someone To a foreign country like Belgium We would not want the foreign authorities To second guess Our decision Here Mr. Smith The Casey decision Said we owe great deference To the foreign government What is our role Is it rubber stamp How do we conceive of The role that we have here I think that In a nutshell the role would be That the court would satisfy itself That certain prerequisites are met First of all You would evaluate appellant's claim It is a double jeopardy claim That arises under the treaty You would look at the treaty To ensure that that is a provision Of the treaty You would look at what Belgium did Extradited You would look at the fact That it ruled on these questions And that would be the end of the court's inquiry The court would not We don't care What it said This court The court would look behind Belgium's decision Suppose the United States Agreed to extradite A person Here On Offenses A, B, and C And He is extradited to Belgium And Belgium Decides To prosecute him on Offenses A, B, C, and D And suppose the United States Has just Finished prosecuting On D And he's just been released After serving his time on D Now I just wanted To put it in the sense That the United States Might have an interest As distinct from Where they're receiving And to what extent Would we contemplate That the Belgian Court would even inquire And understand Whether or not That decision by the United States to extradite Contemplated that There could be a prosecution In Belgium on Offense D And what I understand From the government Is really The court has no role Well I think your Suggestion Judge Rogers Is compatible with the government's position Because there is an important distinction Between the situation where the United States Is extraditing a defendant And that defendant would have A view here Versus the situation in this case Where Trabelsi is being extradited To the United States But what I was trying to highlight Is what is the nature of the Inquiry by the inquiring Court Now we're after extradition Casey was before extradition Other courts have Looked at this after extradition Many times in the context of habeas And other times Actually after trial But I gather the government Is not resisting the notion That article 5 Is in the nature of A double jeopardy protection Which a defendant May invoke We are not resisting the suggestion That article 5 Is a double jeopardy type of claim That it Is similar to abney But what we are saying is that There's a predicate or ancillary question Which is whether the court even has jurisdiction To review You said we shouldn't And I wondered whether you were acknowledging But we have jurisdiction But once we have jurisdiction Then we should exercise We're suggesting the court lacks jurisdiction That the court would only have the authority To inquire on the papers In the manner that I mentioned Even to do that Don't we have to have jurisdiction Are you Are you I mean that's I don't think necessarily Because when Supposing the court lacks subject matter jurisdiction It still has to evaluate the papers And the parties And the claim in order to Satisfy itself that it lacks subject matter jurisdiction But your statement about We shouldn't inquire Means he loses As distinct from I And perhaps I missed But what I'm saying is the court lacks jurisdiction To do more than that But And I would suggest that in many of the cases That have evaluated Claims on the merits They've taken one of two strategies Either the parties haven't raised the issue And the court hasn't addressed it Or they've said this is a complicated question And they've set it aside And said the merits are simple So we're going to address the merits And if I may I would like to do that I understand your position Because it seems like you're saying something Different now than what you said in your briefs Are you saying that we do not have jurisdiction To hear this appeal at all We're suggesting that And we did say that in our brief And then we took the position that At a minimum Under the Casey decision The court had to grant at least great deference To the decision of the Belgian court But the primary argument was that The court shouldn't review it What I'd like to do is Pivot to some of the Factual claims No but before you pivot I just need to be clear where we are Because I know where you want us to end up  What's the path there is If you're acknowledging that a treaty Is the law of the United States And that article 5 Includes a double jeopardy protection That a defendant Facing prosecution in this country Following expedition May invoke Then why are we not in the Abney type situation Where we did differ Your honor is in the last part Of your suggestion That we think that Given those set of facts That the defendant would be in the position of any other defendant In the United States The fact that the treaty is the law of the land Doesn't mean that a defendant may assert Any claim at any time No no but I'm just clear I mean Casey leaves this open It does He's now in this country Having been extradited By Belgium at our request And he's claiming That while you can prosecute him On a lot of things There's some things you can't prosecute him on And he fully litigated that In Belgium I understand but now he's here And Casey left this open And I just need to understand What is article 5 If it isn't something That a defendant Has a right to invoke Sure Article 5 could be seen In a variety of ways I would suggest that it is a provision That governs the roles Of the two sovereigns So it doesn't necessarily mean That a defendant has legal rights Under that provision And even if he did They would be in Belgium And that's the basis of our argument And this in part answers Judge Wilkins question I don't understand If Belgium and the United States Enter a treaty that says Any person we agree to Act Right under this treaty Will have the protection Of double jeopardy Let me just say it that way On when If and when they are prosecuted In the receiving country I understand the two countries Could duke it out But what's the purpose of having that in a treaty If it's not to afford Some protection to the person Who's actually the subject Of the request And the transfer In that situation Then the treaty itself Would authorize the court To engage in A sort of double jeopardy analysis But the treaty here doesn't say that It says that A person can't be prosecuted For the same offense of conviction In the requested state Which is Belgium Appellant litigated this Repeatedly And we can talk about how he did that But Belgium made a final determination The minister of justice Granted extradition That was affirmed by the council of state The United States Obtained a diplomatic note Which is the decision of the government Of Belgium explaining That the result of all this was That the overt acts were not excluded That Appellant could be tried on The government's indictment on the offenses That the Belgian authorities Had prepared the offenses In the two countries And were satisfied that there was No double jeopardy issue As under the treaty And as I mentioned before That would be the end of the court's inquiry But appellant has made a lot of other Claims that I do want To address We're going to give you time to address them But let me just ask on this point Do we have authorities In the context of Specialty or specialité Or however it's referred to In diplomatic relations That Allows the receiving Court to inquire Like Johnson versus Brown And it seems like There's a separate question Whether the prosecution That is proposed In the United States is consistent With the extradition It's not that we're reviewing and questioning What Brussels did for its own Satisfaction It's that we have an obligation Under Blackburger to make sure That The prosecution here is Consistent in our view But I think that's a very So again We have some ability I mean let's say Once he comes here With 100% deference to the minister's Decision he's extradited He's here And instead There's a superseding indictment that charges him For the absolute closest Analogue in the United States to the Belgian Laws under which he was prosecuted Presumably that would be A Johnson versus Brown problem No? I guess I have At least two responses to your Suggestion and one is That double jeopardy And specialty are quite different The specialty claim Only arises after Extradition and has all To do with what the government Of the United States is doing The double jeopardy issue under the treaty Not the standard Blackburger inquiry of a United States Defendant but under the treaty Is are the offenses the same And that is a question for the extraditing That country from which The defendant is being extradited In our view and specialty So specialty is Distinguishable because It's a claim that arises later Unlike this claim we would argue Why? It wouldn't be clear until The government actually Began its prosecution Or even engaged in prosecution Of what happened and even If the court didn't think that Was sufficient Isn't it structurally just the same Where in order to get the extradition The U.S. executive branch makes a proffer Whether under specialty Or under double jeopardy And that's what the foreign sovereign Looks at and so it's really structurally Very closely analogous Here we would be addressing specialty And in the double jeopardy context Belgium has already Addressed that and would address that Just like we would if we were sending someone So it has to do with who under the treaty Is responsible for the inquiry But my second argument is Even if the court disagreed with that And thought the inquiries were the same This court in Lopez Sierra for example Said that the question of whether A defendant can even raise specialty I don't follow that So if Belgium has Let's say a privacy protection That we don't recognize That could raise a specialty problem You know we want someone to be Extradited from Belgium Belgium is the one that's going to examine The specialty issue and put a halt to that No not us, you said it's a different Sovereign That sounds more like a dual criminality problem There's a grant of extradition And the United States government Has gone beyond that Here for example we obtained Another superseding indictment And we added a whole new charge Johnson versus Brown You say we won't extradite him How about for this And then they extradited him We've got him for that So that's why I'm saying that would arise later And that is contemplated That the United States government May adjudicate that claim But the second part Of my response is Even if the court Disagreed that that was somehow distinguishable It's not even clear that A defendant can raise a specialty claim In Lope Sierra Just a few years ago this court said that was an open question Some circuits have allowed such claims To go forward It's clear that this court would lack Jurisdiction over such a claim on interlocutory Review I don't know of any circuit that allows that If the specialty claim Were allowed to go forward It would be following conviction During direct appeal And defendant And this I guess goes back to my Casey point before Appellant will have Those sorts of rights In the future Subject to trial and conviction He would have a direct appeal So he can vindicate His other rights The only thing that we're talking about here Is the double jeopardy analysis The comparison of the offenses Belgium has done that Tell us more about that Let's step back in the context Whose interests Are being served And how In having article 5 I have to say it was very striking to me that in your brief You mentioned only Torture and trade secrets As potentially The targets of this And that seemed Very limited to me We're just giving an example Of overlapping claims The court earlier mentioned Murderer and that could be similar Given extraterritorial Jurisdiction if there was just a Murderer committed by or against An American citizen Both countries could prosecute that That may be barred Under the treaty And would beg How one would analyze that But if Belgium But the interest of what Why is article 5 in there Whose interests The countries Have contracted They have entered into the treaty With certain expectations The rights belong to the countries And so For example Some circuits allow a country to waive A specialty claim Is article 5 waivable in your view We think it could be You know It hasn't been addressed by the parties And certainly Appellant would be In the court's hypothetical earlier today Where the question was Supposing Belgium did something That was In terms of the extradition Our response would be First of all this court doesn't review the Belgium decision But second of all he's had that review If the minister of justice did something Funny The council of state is responsible For reviewing that decision Which is what happened here Suppose the minister Of justice In all of the courts Did some sort of Analysis and they said That the elements were different And They based Their analysis on Of the elements of the U.S. statute On the lower court decision And After The extradition happens The supreme court Interprets the statute Completely contrary To that lower court decision And based on The supreme court's interpretation Of Blockberger For the plot We should just ignore what the supreme court Says and Give deference to An erroneous Belgian Interpretation This court Should but Appellant would have the ability to make Those arguments in Belgium So he Brought not only the same claim He made the same arguments In Belgium He made the arguments but the offenses were different He explained why He had a view to numerous courts So if his reviews in Belgium Were exhausted And he's extradited And he's brought here We can't review it Our response would be You know Try to argue that Back in Belgium So that you can get sent back But we're powerless To do anything That's how you would have us write that I think so although I would And I haven't Thought this Through fully but I guess I would say That the court can take comfort In the fact that Once appellant is here and the double jeopardy Question has been resolved He would still have all the rights Of any other defendant In the United States so he would be able to Raise claims on direct appeal He would be able to raise collateral claims But I thought your argument is that I mean double jeopardy Doesn't apply with different sovereigns That's why you have state prosecutions And federal prosecutions For the same time The only reason that he's got any protections Here is because of the treaty Right So to the extent that He has any double jeopardy Rights That can be recognized Is because they were granted to him by the treaty So Who gets to say Whether The treaty is being Complied with I guess the short answer to your question Is that he would not have that recourse For a number of different reasons One is the jurisdictional questions that I mentioned He could raise his arguments in Belgium But Belgium Is also applying its own Law and its own procedures To the Extradition so it's Not even clear to me that If the Supreme Court said something about double jeopardy That post dated The Belgian Determination that that would be relevant To what Belgium would be I mean they say The Belgian highest court says That we find that for charge A the elements are 1, 2, and 3 And under The US Offense The elements are A, B, and C And there's Difference Applying the Blockberger test And therefore Based on that we extradite This gentleman to the United States And then the Supreme Court says Well the elements to the US offense are A, B, and C There's something else And When If we were to look at that we would say Blockberger no longer applies Because the Supreme Court Locked off element C It just says element A and B Right You know That would have no relevance At that point Because it just happened to come Too late so it's not relevant I mean it would seem so Because the claim there would be That Appellant would be asking this court to review The legal determination Of the Belgian government Of the Belgian authorities And I'm not aware of any authority That would allow this court to do That I mean Casey makes clear That Even if This court were to Grant great deference to The decision of a foreign sovereign That this court does not Review legal errors of a foreign sovereign And that's exactly what that would be I know You're urging us not to get there But assuming that We do want to understand the nature Of the application of article 5 Under blockberger to These counts Can you just walk us through On count 1 Versus Belgian charge A The element that Count 1 includes The Belgian charge A doesn't Conspiracy Conspiracy would be 1 Correct That's an agreement And I'm going to respond Not by repeating our brief But I'm going to respond to what Appellant's counsel argued this morning And she argued that Belgian had charged Appellant with a conspiracy She was focusing on US count 1 She said that That had to do with the way He was charged in Belgium And my response is That you look at the offenses Article 51 This is explained on page 34 Of the government's brief Says that that is an attempt An attempt is clearly different from a conspiracy Because a conspiracy Requires an agreement Appellant has cited a lot of language That to me sounds a lot like Aiding and abetting Where people cooperate to do something That doesn't mean it's a conspiracy Even if the court did not buy that argument And concluded And again Addressing the merits That the court Weren't convinced of that You would have two different conspiracies The scope is different The time is different The object of the conspiracy is different There are many differences And in fact going beyond count 1 United States indictment charges Three different conspiracies One of the differences The court suggested earlier today In terms of count 3 and 4 Of the United States indictment Is terrorism And I would make the following point It is not just a matter Of lexicon That the countries are using The government has charged A crime of terrorism Terrorism is defined in the US code As involving a political purpose 2332B I think it is Defines terrorism as an attempt To influence the government Now Belgium charged A palette with offenses relating To an association of wrongdoers Or membership in a criminal gang That is clearly not the same thing One can be a member Of a criminal gang or criminal association That has nothing to do with terrorism And it doesn't have a political purpose A political purpose I don't recall you emphasizing that In your brief There is a Vision of the Treaty that Steers clear of Political questions But that is different from whether the offenses are the same I assume you are also Relying on conspiracy Not being present in the Belgium charge Killing US nationals Killing US nationals The timing of the conspiracy Is different The scope and object That sounds like it is getting into the Syndonia analysis That is not in the law One would have to look at Our argument is Essentially a blackboard One looks at the offenses It gets slightly more complicated In conspiracy Because one would look at The scope of The object of the conspiracy Or the conspiratorial agreement That would distinguish one conspiracy From another It is like her point about if it is murder The fact that if it is murder on your books And their books If it is not the same person You cannot apply Blackburger So here you are saying The facts come into play in this limited way Are we even talking about the same thing here? But I am not sure that I See where the scope is so different That is where you get into these charges 23, 24, 25, 26 That is really the heart of the U.S. case as well Well Again Compared to count one There are three different conspiracies Count one conspiracy Is the same as the Belgian charges Because it involves according to him A plot to blow up the Military base The United States charges Include 28 Separate over acts They involve training They involve acts that occurred in Pakistan And Afghanistan They involve involvement in Al Qaeda The fact that They involve attacks that would Be sort of mobile Where it wasn't just The fact that depending on The needs of Al Qaeda I guess and that is paraphrasing Be sent to various locations Or places So You said there were three Conspiracies Can you just tell us what you are talking about The other conspiracy Is And again each of these would be distinguished Because they involve an agreement So even there And the Belgian charges do not So even there you prevail under Brockberger The second conspiracy is The Weapon of mass destruction And there You have again a different Object of a conspiracy It's not simply to blow up The military base And it's not simply to use one method At one time in one place It is brought It is different It involves a weapon of mass destruction That could be used at a different time Or a different place The third conspiracy involves Could be but was it charged With a fax Given the indictment Well if you look back at the first If you look at the overt acts And again I appreciate the point about You know our theory You look at the offenses You look at the offenses themselves And there you have an agreement You have Of a certain type And you have one act Or one substantial step So those are the offenses And those themselves are different But when you know one looks at the Object of the conspiracy What does the Belgian have that the US doesn't have In Charge A, Count 2 Brockberger Requires us to have both elements In the US that aren't in the Belgian And elements in the Belgian that aren't in the US Belgian method Weapons of mass destruction People It has Belgium has Knowledge of someone present Structures So that's distinguishable Structures is distinguishable The The Klein-Brogl military base And the use of a bomb are all different Weapon of mass destruction is broader Could be something different And could be used at a different place But you're talking about the same chemicals You don't have any evidence of a different Weapon of mass destruction So that's You're slipping out of The formal Yeah We're looking at the Object of the agreement But when you're looking at the offenses You would still come to the same result For the reasons that we just Discussed I actually find Counts 3 and 4 harder And that's material support Because Because they You know You charge in Count 3 a conspiracy to provide Support to a foreign terrorist organization And they've Charged in Charge D An association Formed to injure persons or property There's a conspiracy aspect there There's an association or gang Intending to use force One Distinction I guess Is conspiracy versus instigator But he's not bound to have been an instigator Does that matter? It doesn't matter First of all, one distinguishing element Would be the conspiracy The agreement Here they do charge Conspiracy Don't they? Agreement Well We would argue it's not the same But even if they were two conspiracies They're different conspiracies But the reason they're not necessarily the same Is that on an aiding and abetting Theory you can agree with someone To do something But the conspiracy charge is different Because it's punishing the agreement It's not punishing the act But Belgian Charge D Is association Formed to injure persons or property And it's under Belgian Criminal Code 322 Conspiracy 323, association to commit crime So that one Seems quite explicitly Also focusing on an agreement Not so? It doesn't mean that it's a conspiracy In that formal sense But even if the court thought they were two conspiracies And interpreted D as a conspiracy It's still different But a conspiracy in the United States Is material support To a foreign terrorist organization So it requires material support That's not an element of the Belgian defense And it requires a terrorism Which as defined in the U.S. Code Is not simply a group Or a gang or a criminal purpose It's more than that It's a political purpose To influence the government If there's a foreign terrorist organization Differentiates the United States What in Belgium is required That's not required in the U.S. For blockburger purposes I'm not sure I see that Well in association of wrongdoers Would be something different That would be a requirement That would not be in the U.S. Has the treaty itself talked about Association of wrongdoers being tantamount Being the Belgian equivalent of conspiracy No The treaty language is in Article 2 It's not in Article 5 It uses the word or in between those two things And you also need to consider the purpose of the treaty Article 2's purpose Is The whole purpose of the treaty Is to encourage extradition So Article 2 is saying Look in the dual criminality context We interpret that broadly We want to bring people in We interpret it double jeopardy narrowly Because That excludes folks From being extradited to the United States And we want to interpret that narrowly And that's consistent with the purpose of the treaty The Senate report So the purpose of the treaty Refutes the argument that those things are the same In the treaty As does the use of the word or in Article 2 So They are in fact different And it's not simply a matter of nomenclature And that's You don't have anything else to differentiate the Belgian From the U.S. on charge On charge On D Belgian charge D Is the association of wrongdoers Yeah I guess The I mean The hardest one I think is count 4 and Q Intending to use force You can do terrorism without intending to use force Again These things are different for the reason I said Terrorism has a political purpose As an element So that would be an element of the U.S. offense It is not an element of the Belgian Offense The Belgian Offense is But Is it An organization Intending to use force That's a subset of It could be But that's not dispositive Because here we're talking about conspiracy We're talking about the elements are not the same There can be overlap of conspiracies Dixon and Felix make that clear So it's The question isn't whether there's overlap The question is is it the same conspiracy And it's not the same conspiracy Belgian count Q involves Membership in a private militia The purpose of the private Militia being to use force It could be a subset But that doesn't mean that there's a double jeopardy Problem Well I mean what I'm asking for Is the Blackburger that shows It to not be wholly included Within So you don't want it to be a subset if it's going to satisfy Blackburger Right There could I guess what I'm saying is there could be overlap Right You have to point to something that's penalized by the Belgian law That isn't by the US You're saying It's the non-political Right Distinguish Distinguishable The US requires material support  So those are two things that are different So what's different in the Belgian Count Q Is membership in a private militia That's not required in the US Count And the purpose to use force is different Material support could be Why is the purpose to use force different Well the US code requires Defines material Support as Can be something less than using force It defines it as being for example providing money To a foreign terrorist Organization But the organization Has to have a purpose to use force Or not It could or could not Those things are distinguishable They're different And my point is that I think you and I are saying slightly different things though I'm saying that the organization You look at the purpose of the organization Yes somebody can be providing material support by giving money But if you're Associating with them Or conspiring with them That's about The support you're giving But the group, the definition of the group Is in Belgium A purpose to use force And in the US A purpose to use force and or a threat Or threats or coercion So the two are Not necessarily the same They're distinguishable What about, what is it I mean Trudeau's lawyer has said That it seems like the treatment Within the Belgian system Of the exclusion Of acts 23 through 26 Kind of shifted as the case went up And there's a case to be made for that Originally that lower court Was saying well they're going to prosecute him for this And then by the time it gets into the hands Of the minister Yeah you can use that evidence, you can use those acts You just can't Those can't be the separate offenses What is the weight As you understand it Of Belgium having taken the trouble To exclude 23 through 26 Well I can't answer the question Of what the initial point was But my response would be Initially They seemed to exclude those counts But by the time the minister of justice made The determination Which is the grant of Extradition That was not That was not an exclusion And that was affirmed by the council of state And the diplomatic note makes clear That there is no such exclusion So Well they do still talk about it As if they're affirming it And oh yes there's that exclusion And well what does it mean So if you're asking us to do anything other Than a complete rubber stamp We have to have some Non-arbitrary way of describing What that's about I just have two responses One is that the Belgian court The Belgian system Followed its course So and again That's why the IC thinks The court shouldn't even inquire Right So we're saying Look the initial courts basically made a mistake They looked at the overt access being a charge And the minister of justice said Well that's not the way we compare the offenses You look at the elements of the offenses And see if they're the same That's what the treaty requires The minister of justice corrected a mistake In these earlier court decisions That's how the process Is supposed to work Appellant raised arguments Throughout this process They were rejected The minister of justice's view Is set forth appendix pages 583 and 584 It makes clear That the subject is the offenses And the elements That the overt acts are not excluded That the United States can raise that As evidence during trial And appellant was arguing this morning That those are still excluded And that We disagree with that That's incorrect That's refuted by page 584 of the record The council of state went on to affirm The decision of the minister of justice And uses the same language About the offenses The fact that the government can use other evidence It can use all of its evidence The diplomatic note Specifically references The overt acts 23 to 26 And says the government can use those So if there were any Question at all about the meaning of these Various court decisions And government decisions The definitive view Of the Belgian government Which is expressed in the diplomatic note Is as the government The United States government Is arguing to you now Which should give you solace That there was not in fact this mistake Again setting aside the issue About whether this court Would even review that Or reach that question I think I might have missed your transition You said there were two reasons One of them was that the Belgian system Had followed its course And the other one was that Well that the factual record Actually refused I mean I see these as two different things One is that the initial courts Did accept these overt acts And they were essentially overruled Or reversed Or vacated By later decisions And the later decisions are the correct ones And the second part of my response Is because how do we know that We know that because the record Has the plain language Of the minister of justice Decision and includes the plain language Of the council of state decision And if there were any questions About any of those things We have the diplomatic note Which is the expression of The government of Belgium View about This particular question Anything you want to add I don't I don't think so Thank you very much We urge the court to affirm the judgment Of the district court in this case Thank you very much What government counsel just said Is essentially would be the same As Belgian lawyers standing up before A Belgian court and saying the attorney general Overruled the magistrate judge In his extradition decision He couldn't do that And neither could the Belgian minister of justice Overrule the court There's a process They took the warrant To decide And to be clear What the diplomatic note says Is you can use the evidence It does not say that you can prosecute Them for the offense in overt acts 23 through 26 Those overt acts were excluded From the beginning and nothing changed It was never overruled And if you look to the Belgian minister of justice Opinion Counsel just cited to it On 584 Two pages before that And it says given the removal of the overt acts The prosecuting authority Had no authority To change what the court said About how the warrant Was enforceable Which was the original decision It wasn't appealed as to the exclusions For 23 through 26 That stands The confusion seems to be In the fact that in this case As in every case Even if you exclude Something from extradition You say you can have him for offense A, B, and C But you can't have him for offense D When he goes to be prosecuted For A, B, and C You can use the evidence of offense D As other crimes evidence Or evidence of the charged offenses In any other way you want to And that's always what the Belgians have been saying You can use the kind of Provable evidence to prove Your other charge But they made the mistake of thinking That there was some other charge And the problem here is That there wasn't Blackburger analysis That the otherness of the charge Is something we measure by Blackburger We don't measure it by a kind of transaction Occurrence that there any type analysis And here The thing that distinguishes it Is quite formal But it's the foreign terrorist organization It's the U.S. people being involved It's that the Belgian law Looks at intent to use force Against structures They're not fully overlapping They have Aspects that are not Replicated in the other law And so the fact that they are really focusing on As a big part of the case Both prosecutions Decline of all real Efforts But in ways that are different offenses Because they're both conspiracy offenses And even in the U.S. When you compare conspiracies You have to look at the underlying facts You have to look at Whether they're the same people, the same places  Look at the interdependence Among the participants And the overlap among the participants Here it is the same Exact conspiracy The same group of people doing the same things For the same purpose But in a way you're answering a question that's One step further down the road From where I think the United States Would stop you And they would say well If it was like murder here, murder there Then we'd look and see if it's the same person Or conspiracy here, conspiracy there Then we'd look and say It's got to be the same conspiracy or not And if it's not then it's different But they're saying No, it's not conspiracy there or conspiracy here It is this type of crime there And that type of crime here So we're not past Blackburger So we're not even getting into your question Because we're not worried that we've got We've got the same offense But we're barring prosecution Because it's actually a different person that was killed They are the same offenses The main thing that the government just said was that In the U.S. they're terrorism offenses They talked about terrorism offenses being political offenses That's not an element Of any of the offenses Nowhere is it an element It has to be foreign But it has to be a designated organization That's the difference Because it has to be a designated organization Whereas in Belgium it only had to be this Certain kind of association What we're asking the court to do Is just look at what is a designated organization It's an organization That uses force against people or property So it's all They are the same in that respect They target the same types of organizations They're both here targeting Al-Qaeda And to say because We call it a designated terrorist organization But they're calling Al-Qaeda An association formed to attack Persons or properties He can be prosecuted at the same time It's not what Double Jeopardy Intended Double Jeopardy is to face like the Razak situation Where they charged murder And here we were charging air piracy That had to do with airplanes And other elements that aren't the same Here the elements are the same They're just all different things But in the bank robbery Even if you have a DC prosecution For armed robbery And then a federal prosecution For bank robbery And they're both at the same time Here in the U.S. District Court There's no Double Jeopardy issue there Because the bank robbery Federal statute requires it to be A federally insured institution Etc. So you can prosecute a guy For armed robbery And bank robbery For the exact same act Right? Well there would be the armed aspect But the only difference was the federally insured And robbery Yes, you could prosecute that Putting aside the fact that there's separate sovereigns In the U.S. and they haven't negotiated It's the same sovereign The U.S. is the same sovereign In the Superior Court Or the DC Code I understand, I thought the court was using separate states But even if the only difference Is the federally insured Yes, you can What we're asking is If you look at the treaty If you use that same very strict Blockburger test for international census You're always going to have that problem And the parties to the treaty Have negotiated that away Because they said you don't look to a central jurisdictional element That is under the dual criminality provision But I think you can consider that When you consider what they meant By the same Offenses And if you say that they meant Because we're calling them U.S. citizens That would also allow The court's example of murder Because it's a U.S. citizen And murder because it's a Belgian citizen When it is the same offense If you allow that distinction to be the distinction But The problem is That in an international context There would be no purpose for the double jeopardy provision then And then To get to the court's jurisdictional questions The parties here To the treaty Negotiated and contracted For the rights of the people That they have control over We want our U.S. citizens To have the same right not to be prosecuted In Belgium that we have Not to be prosecuted here And if you allow And If you accept the government's argument And completely defer to the Belgians That would mean a U.S. citizen could be sent to Belgium And we would have No control over the fact That if we made a mistake About Belgian law And the Belgians are saying well that's not really what the law is But we're still going to prosecute them Because you made that mistake And the fact that the Belgians made a mistake here If you look at the record on page 554 And that the only reason That they extradited here Was because they misunderstood The nature of the conspiracy They specifically say that the U.S. Bases its prosecution on the existence Of a larger criminal conspiracy Than only the criminal conspiracy in the Belgian file And then they refer to They say that the purpose Of the offense considered by the American authorities Is broader than the reference Alone to the attempt to destroy Klein Bruegel And is based on elements Having nothing to do with Belgium And then it refers to the Begel conspiracy and the Richard Reed conspiracy Which is not the evidence here The Belgians made a mistake In thinking that this was a different conspiracy The same actors The same offenses The only distinction being What they call the organization And the U.S. nationality Alright, anything further? No, your honor Thank you, we'll take the case under advisement
judges: Rogers, Pillard, Wilkins